[Cite as *State v. Carr*, 2025-Ohio-4888.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                                    Court of Appeals No. WD-24-088

    Appellee                                               Trial Court No.  22 CR 553

v.

Alexander J. Carr                                         **DECISION AND JUDGMENT**

    Appellant                                              Decided: October 24, 2025

\* \* \* \* \*

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Assistant Prosecuting Attorney, for appellee.

Michael H. Stahl, for appellant.

\* \* \* \* \*

**SULEK, P.J.**

{¶ 1} Appellant Alexander Carr appeals the judgment of the Wood County Court

of Common Pleas, which found that he violated the terms of community control and

ordered him to continue on community control with the additional conditions that he

serve three days in jail, enter into an Intensive Supervision Probation Program, and complete an assessment for Cognitive Behavioral Therapy. For the reasons that follow, the trial court's judgment is affirmed.

## I. Factual Background and Procedural History

{¶ 2} On March 30, 2023, Carr pleaded guilty to one count of burglary in violation of R.C. 2911.12(A)(3) and (D), a felony of the third degree, and one count of assault in violation of R.C. 2903.13(A) and (C), a misdemeanor of the first degree. The trial court sentenced him to serve three years of community control, with a condition that he not possess or use marijuana.

{¶ 3} On September 5, 2024, the State alleged that Carr violated the terms of his community control. Carr was arrested and came before the court on October 10, 2024, for a bond hearing. At that hearing, he admitted to the violation of testing positive for THC on August 23, 2024, and waived a formal hearing on that matter. He requested that a dispositional hearing be set for approximately one month later. He further requested that he be released on a supervised own recognizance bond.

{¶ 4} The trial court, addressing Carr, inquired if he was "going to continue to be a jerk to probation?" The trial court stated that it had received reports that Carr was disrespectful to his probation officers. Carr denied that he was disrespectful. The trial court then informed him that his behavior was going to contribute to its consideration of what to do at the disposition. It scheduled the disposition hearing for November 14,

2.

2024, and ordered Carr to submit to weekly drug tests and to not consume any alcohol, illegal drugs, or THC.

{¶ 5} At the November 14, 2024 dispositional hearing, the trial court informed Carr that there was another positive test for THC on October 16, 2024. Trial counsel indicated he was unaware of the new positive test. Notwithstanding that, he argued that Carr was "back on track" with the probation department and was "certainly aware" that he could not use marijuana or any kind of THC product as evidenced by the negative drug screen that he submitted just prior to the dispositional hearing. Defense counsel requested that Carr be continued on community control.

{¶ 6} The trial court then addressed the October 16, 2024 positive test. It stated that its understanding was that Carr admitted to his probation officer that he used THC. It asked if Carr was now admitting the violation to the trial court and waiving his right to a hearing on the new violation. Defense counsel conferred with Carr and responded that Carr would acknowledge that the THC was "in his system," and that he would stipulate to the violation. Counsel noted that the THC could have "been lingering for a period of time." The trial court then asked Carr if he was admitting to testing positive on October 16, 2024, and if he was waiving a hearing on that violation. Carr affirmed that he was.

{¶ 7} The trial court then heard from the State, who clarified that the test results from October showed a higher metabolite level than the test from August. The trial court noted that it heard Carr say that THC can stay in a person's system for up to eight weeks. The State did not disagree, but posited that the metabolite level would be going down not

3.

up if there was no additional usage. The State then recommended that Carr continue on community control with the condition that he be placed in the Intensive Supervision Program through the probation department.

{¶ 8} Having heard from defense counsel and the State, and having afforded Carr an opportunity to speak, which he declined, the trial court addressed Carr, stating:

> Okay. Mr. Carr, I knew exactly what I was going to do when I came in, but now I feel like you're lying to the Court. I think that you absolutely used again between your August test and your October test. I think you said that to the Probation Department. You were last in court and – when you were in court last time I said, hey, you need to start treating probation a little bit better than you have been, okay. Now I feel like we have an additional factor to consider, and that's the fact that I think you're not telling the Court the truth of what happened, and I'm now to continue you on community control when I think that you're both willing to lie to probation, that you're willing to not treat your probation officer or the office, in general, with the appropriate amount of politeness and respect, and now you're in court doing the same thing to me. You're suggesting that there might be some science out there that says that THC can stay in your system for up to eight weeks, but I doubt that it says that for a urinalysis. Maybe for hair. And – but I would have to see that. Everything that I've seen says, maybe it can get – you know, two to four weeks for an everyday user, four weeks for a heavy everyday user. But I think it's very hard to argue [the State's] point that that number would go up instead of down over the course of time.

At the end of its address, the trial court offered Carr an opportunity to respond, to which he replied, "I have nothing to say." The trial court then offered defense counsel an opportunity to speak, and defense counsel replied, "Judge, I'm not sure what I can, really, add to that to advocate effectively at this time."

{¶ 9} The trial court then sentenced Carr to continue on community control. It added the conditions that Carr participate in the Intensive Supervision Program and that

4.

he complete a cognitive behavioral therapy assessment and follow any of its recommendations. It further ordered Carr to serve three days in jail "because I don't think you've been honest with the Court." The trial court adjusted when Carr would report to the jail so that it would not conflict with his work schedule.

## II. Assignment of Error

{¶ 10} Carr timely appeals the judgment finding him in violation of community control and ordering him to continue on community control with additional conditions. He asserts one assignment of error for review:

> 1. Trial counsel was ineffective for failing to challenge the additional allegation presented at the community control disposition hearing, or request a continuance, which resulted in a more severe sanction, with portions of the overall sanction ongoing, and the trial court believing Mr. Carr to be a liar.

## III. Analysis

{¶ 11} In his assignment of error, Carr argues that his trial counsel was ineffective. To demonstrate ineffective assistance of counsel, Carr must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687-688, 694 (1984). That is, Carr must show (1) "that counsel's representation fell below an objective standard of reasonableness," and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

{¶ 12} Here, Carr argues that the dispositional hearing was beset with confusion. Specifically, he cites defense counsel being unaware of the October 16, 2024 positive test result, the trial court's initial belief that no analysis was done on the test because Carr had

5.

admitted to probation that he used THC, and Carr admitting to the October 16, 2024 violation before learning from the State that the THC levels were higher in October than in August. Carr asserts that instead of stipulating to the October 16, 2024 alleged violation, defense counsel should have requested a hearing to clarify any confusion. He further asserts that defense counsel's failure to do so prejudiced him because the trial court determined that he lied to the court based on that violation and consequently ordered him to serve three days in jail.

{¶ 13} The State, in response, argues that it is objectively reasonable conduct for defense counsel to not request a continuance to investigate a positive drug screen that Carr did not dispute. It notes that defense counsel instead attempted damage control by focusing on the negative drug screen that Carr submitted on the day of the dispositional hearing. The State also argues that no reasonable probability exists that the results of the proceedings would have been different because the trial court imposed a three-day jail sanction as a consequence of the collective disrespect of court personnel as well as the chronic disregard of the conditions of his community control. It contends that requesting a continuance for a hearing would have potentially resulted in Carr receiving a longer jail sanction for the second violation.

{¶ 14} Under the facts of this case, Carr has failed to demonstrate that counsel's conduct fell below an objective standard of reasonableness. In Ohio, a properly licensed attorney is presumed competent, and an appellant bears the burden of proving his trial counsel's ineffectiveness. *State v. Gondor*, 2006-Ohio-6679, ¶ 62; State *v. Beard*, 2020-

6.

Ohio-3393, ¶ 5 (6th Dist.).  "Judicial scrutiny of counsel's performance must be highly deferential.  . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland* at 689.  "There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way."  *Id.*

{¶ 15} Defense counsel stated that he requested a one-month delay between Carr's initial violation for a positive drug screen and the disposition on that violation to give Carr an opportunity to "get back on track" with probation.  During that time, Carr tested positive again.  At that point, counsel had two options:  (1) advise Carr to admit the violation and only be subject to the trial court's disposition once, or (2) advise Carr to seek a hearing on the alleged violation thereby limiting his exposure at the immediate disposition, but potentially exposing him to a second disposition and also risking the possibility that he tests positive for a third time.  Both options contained risks and benefits, and this court cannot say that either choice would have been objectively unreasonable.  Defense counsel's decision to not seek a hearing, therefore, falls within the wide range of reasonable professional assistance, and Carr has failed to satisfy his burden to prove that defense counsel was ineffective.

{¶ 16} Accordingly, Carr's assignment of error is not well-taken.

## IV. Conclusion

**{¶ 17}** For the foregoing reasons, the judgment of the Wood County Court of Common Pleas is affirmed. Carr is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.
_____
JUDGE

Myron C. Duhart, J.
_____
JUDGE

Charles E. Sulek, P.J.
CONCUR.                                                    JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions. Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.